UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACKSON LEWIS LLP
59 Maiden Lane
New York, New York 10038-4502
(212) 545-4000
    Diane Windholz (DW 9806)
    Matthew A. Steinberg (MS 3979)

ATTORNEYS FOR DEFENDANT

JOSE R. LIMA,

                Plaintiff,        07 Civ. 6573 (DC) (RLE)

      -v.-

ADDECO and/or
PLATFORM LEARNING, INC.

                Defendant.

## STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

        Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of this Court, Defendant Adecco USA, Inc. incorrectly named herein as "Addeco" (referred to herein as "Adecco" or "Defendant"), by and through its undersigned counsel Jackson Lewis LLP, respectfully submits the following Statement Of Undisputed Material Facts In Support Of Defendant's Motion For Summary Judgment[1]:

---

[1]     A true and correct copy of Plaintiff's Complaint is attached as Exhibit "A" to the accompanying Affidavit Of Matthew A. Steinberg, Esq. In Support Of Defendant's Motion For Summary Judgment (referred to herein as the "Steinberg Aff"). Exhibits to the Steinberg Aff. are referred to herein as "Ex. ___."

## I. BACKGROUND INFORMATION

1. From approximately October 2004 to February 2005, Plaintiff was employed as an SES Instructor for Defendant Platform Learning, Inc. ("Platform") [See Transcript of Jose Lima's June 24, 2008 deposition testimony ("Lima Tr."), p. 25].[2]

2. Funded by the No Child Left Behind Act of 2001, Platform's SES program provided after-school and weekend tutoring at various New York City public schools for eligible New York City Department of Education (the "NYC Dep't. Of Education") students. (See Affidavit of Daryle Young ("Young Aff."), ¶ 2).[3]

3. Platform provided SES services at various New York City public schools throughout New York City. [See id.; see also Affidavit of Clayvi Rodriguez ("Rodriguez Aff.")].[4]

4. Platform's SES programs operated during two (2) distinct cycles. The first cycle began in or around October and ended in late January of the following year. The second cycle ran, approximately, from February through May. (See Rodriguez Aff., ¶¶ 7 - 9).

5. From approximately October 2004 through approximately February 2005 (i.e., the "first cycle" of Platform's 2004/2005 school year), Plaintiff served as a Platform SES Instructor at two (2) New York City schools. (See Lima Tr., p. 25, 238).

6. Throughout the course of Plaintiff's tenure as a Platform SES Instructor, Plaintiff was employed on a full-time basis as a New York City Department of Education teacher. (See id., p. 34).

---

[2] Relevant excerpts from the transcript of Plaintiff's June 24, 2008 deposition testimony is attached as Exhibit "B" to the Steinberg Aff.
[3] A true and correct copy of Daryle Young's Affidavit is attached as Exhibit "C" to the Steinberg Aff.
[4] A true and correct copy of Clayvi Rodriguez's August 25, 2008 Affidavit is attached as Exhibit "D" to the Steinberg Aff.

## II. ABOUT ADECCO

7. Adecco places temporary and full-time clerical, administrative, light technical and technical professions for its clients throughout the country. (See Affidavit of Vicki Crothall ("Crothall Aff."), ¶ 3).[5]

8. Adecco is an equal opportunity employer which makes all employment decisions without regard to race, creed, color, religion, national origin, sex, sexual orientation, physical or mental disability, veteran status, marital status, or any other protected status in accordance with applicable federal, state and local laws. (See id., ¶¶ 4 - 5).

9. Throughout the course of Plaintiff's tenure as a Platform SES Instructor, Adecco provided payroll and related administrative services for Platform. (See id., ¶ 7).

10. Adecco did not have any role in: (a) hiring SES instructors; (b) determining the SES curriculum and/or selecting textbooks or other written materials distributed to students; (c) determining which SES instructors were assigned to specific schools; (d) determining the number of SES instructors assigned to particular schools; (e) determining which students were assigned to specific SES instructors; (f) determining which disciplines (e.g., Math, English, etc.) SES instructors taught; (g) assessing SES instructors' job performance; or (d) counseling, suspending, terminating or otherwise disciplining SES instructors for unsatisfactory job performance. (See Rodriguez Aff., ¶ 4; Crothall Aff., ¶ 8).[6]

11. Other than assisting with the compilation of new hire paperwork, Adecco's only role in Platform's SES program was to issue SES instructors' paychecks based

---

[5] A true and correct copy of the November 26, 2008 Affidavit of Vicki Crothall is attached hereto as Exhibit "E" to the Steinberg Aff.
[6] During Plaintiff's deposition, Plaintiff confirmed that he lacked personal knowledge regarding any of these issues. (See Lima Tr., pp. 133, 136, 138, 154, 155).

3

upon reports that Platform's staff submitted to Adecco setting forth SES instructors' hours of work. (See Rodriguez Aff., ¶ 5; Crothall Aff., ¶ 9).

12. When Platform determined that it no longer wished to employ a particular SES instructor, it directed Adecco to remove that SES instructor from payroll and to cease issuing his or her paychecks. (See Rodriguez Aff., ¶ 6; Crothall Aff., ¶ 10).

13. Adecco did not have the authority to reverse Platform's decision to terminate an SES instructor's employment. (See Rodriguez Aff. ¶ 6; Crothall Aff., ¶ 11).

14. Plaintiff testified at his deposition that he "[did not] know" the nature of Adecco's business relationship with Platform. (See Lima Tr., pp. 29 - 31).

15. Moreover, Plaintiff testified during his deposition that: (a) "Platform" was the name of the "after school program" for which he taught; (b) the "brochures, the flier, the papers, the books, the program . . . everything was Platform." (See id., pp. 28 - 32) (emphasis added).

16. Additionally, Plaintiff testified that the reason he included Adecco in this lawsuit is because Adecco: (a) "was the ones who paid me"; and (b) because, upon the commencement of Plaintiff's employment as a Platform SES Instructor, Plaintiff submitted new hire paperwork (which Plaintiff described as "legal papers") to Adecco. (See id.).

### III. PLAINTIFF'S TENURE AS A PLATFORM SES INSTRUCTOR

#### A. General Terms And Conditions Of Plaintiff's Employment

17. In September 2004, Lima attended an informational session at I.S. 52 regarding Platform's SES program. (See id., p. 120).

18. Adecco was not involved in preparing any of the materials used for purposes of any Platform informational seminars. (See Crothall Aff., ¶ 12).

19. Plaintiff has no personal knowledge regarding who made the decision to: (a) hire Plaintiff as a Platform SES Instructor; (b) assign Plaintiff to a particular school; (c) assign Plaintiff to a particular class; or (d) assign Plaintiff to a particular subject. (See Lima Tr., pp. 133, 136, 138, 154, 155).

20. Adecco was not involved in any way in Platform's decision(s): (a) to hire Plaintiff; (b) to assign Plaintiff to a particular school; (c) to assign Plaintiff to a particular class; or (d) to assign Plaintiff to a particular subject. (See Crothall Aff., ¶ 13).

21. After Platform hired Plaintiff, on or about November 3, 2004, Plaintiff commenced teaching as a Platform SES Instructor. [See Lima Tr., p. 25; New York City Commission On Human Rights Determination And Order ("NYCCHR Dismissal"), p. 2].[7]

22. On Tuesdays and Thursdays, Platform assigned Plaintiff to teach at I.S./P.S. 192 ("192") from the hours of 3:00 p.m. to 6:00 p.m.; on Saturdays, Platform assigned Plaintiff to I.S. 192 from the hours of 9:00 a.m. to 1:00 p.m. (See Lima Tr., pp. 160 - 161; NYCCHR Dismissal, p. 2).

23. At 192, Plaintiff reported to Jessica Rosa, who is of Puerto Rican national origin. (See Lima Tr., p. 17, 164-165; Young Aff., ¶ 4).

24. During Plaintiff's tenure as an SES instructor, Daryle Young was I.S. 192's Principal. (See Young Aff., ¶¶ 1 - 2).

25. On Wednesdays and Fridays, Platform assigned Lima to teach at I.S. 52 ("52") between the hours of 3:00 p.m. – 6:00 p.m., where he was supervised by Clayvi Rodriguez who, like Plaintiff, is of Dominican national origin. (See Lima Tr., pp 191 - 192; NYCCHR Dismissal, p. 3; Rodriguez Aff., ¶ 19).

---

[7] A true and correct copy of the NYCCHR Dismissal is attached as Exhibit "F" to the Steinberg Aff.

### A. Just Weeks After Plaintiff Commenced Employment As A Platform SES Instructor, Based Upon Plaintiff's Wholly Unacceptable Conduct, Platform Removed Plaintiff From The 192 SES Program.

26. Based upon information provided to and credited by the NYCCHR, on November 20, 2004 "Respondent reduced Plaintiff's schedule from three (3) to two (2) days a week because of complaints from students' parents, who spoke of Plaintiff's lack of focus and the amount of time he spent talking on his cell phone. (See NYCCHR Dismissal, p. 2).

27. During Plaintiff's deposition, Plaintiff testified that Rosa told Plaintiff that I.S. 192 parents complained about him. (See Lima Tr., p. 165 - 166).

28. Based upon further information provided to and credited by the NYCCHR, "[o]n December 7, 2004, [Jessica] Rosa informed [Plaintiff] that he would not longer teach any classes in the [Platform's SES] program at I.S. 192 due to complaints about him from many parents." (See NYCCHR Dismissal, p. 3).

29. Plaintiff testified during his deposition that Jessica Rosa is not an Adecco employee, but rather, at all time relevant hereto, was a "supervisor from Platform." (See Lima Tr., pp. 7 - 8).

30. Plaintiff protested his removal from providing services at I.S. 192. (See generally Young Aff.).

31. 192's Principal, Daryle Young, intervened and directed Lima to stop shouting and to leave the building immediately. (See Young Aff., ¶ 6).

32. Plaintiff, still shouting and acting in a confrontational manner, refused to leave and remained angry, rude and aggressive in public areas of I.S. 192. (See id.).

33. Plaintiff incorrectly stated that, because Plaintiff was a licensed New York City Department of Education teacher at 52, he felt he had the right to roam the 192 hallways at any time, even when, as was the case that day, he had no job-related reason to be there. (See id.).

34. Once it became apparent that Plaintiff would not stop shouting and would not voluntarily leave the building, Young directed the 192 school safety officer to remove Plaintiff from the building. (See id., ¶ 7).

35. Following this incident, Young notified Rosa that, based on Plaintiff's hostile conduct, Young no longer wanted Plaintiff to ever work as an SES instructor at 192. (See id., ¶ 8).

36. Plaintiff testified that: (a) he refused to leave 192 because, in his mind, he "technically and legally . . . could be [there because he was] a teacher and the school [was] open"; and (b) he got "angry." (See Lima Tr., pp. 32 - 33).

### B.  Following Plaintiff's Removal From 192, From November 2004 Through February 2005, Plaintiff Remained Employed As A Platform SES Instructor At 52.

37. Notwithstanding Plaintiff's November 2004 removal from Platform's 192 SES program, from November 2004 to February 2005, Plaintiff continued to provide SES services at 52 on Wednesdays and Fridays, reporting to Clayvi Rodriguez. (See Lima Tr., p. 39; Rodriguez Aff., ¶ 12).

38. Platform generally enrolled fewer students during the second cycle of its 52 SES program than it did during its first cycle. For example, when the weather improved, it became more difficult to encourage students to participate in after-school tutoring. As a result, 52 generally utilized fewer SES instructors during the second cycle of Platform's SES program than it did during the first cycle of Platform's SES program. (See Rodriguez Aff., ¶ 10).

7

39. Towards the end of January 2005, when the first 52 Platform cycle for the 2004/2005 school year ended, SES Area Manager, Clayvi Rodriguez, reviewed I.S. 52 students' test scores and I.S. 52 instructors' other performance criteria. (See id., ¶ 16).

40. Because there were fewer students enrolled for the second cycle of the SES program, in order to determine which SES instructors to bring back for the second cycle, Rodriguez ranked the existing SES instructors based on their first cycle performance. (See id.).

41. After completing this analysis, Rodriguez concluded that, based on Lima's poor performance and insubordination, Rodriguez would not ask Lima to return for the second cycle of I.S. 52's SES program. (See id., ¶ 17).

42. Specifically, Rodriguez concluded that Plaintiff exhibited unsatisfactory work performance and that, as a result, Plaintiff's students were "unable to follow and benefit from the Platform SES curriculum. (See id., ¶ 14).

43. Rodriguez also described Plaintiff as "rude," "defensive," "distracted" when Rodriguez discussed performance issues with him and "confrontational in the presence of students and parents." (See id., ¶ 15).

44. Plaintiff acknowledged at his deposition that he was insubordinate towards Clayvi Rodriguez. (See Lima Tr., pp. 39 - 43).

45. Specifically, Plaintiff testified that, when Rodriguez asked to speak with him about performance issues, Plaintiff refused and instead "called the parent association and other people and said [to Rodriguez] that [if] you want to talk to me, you talk to me in front of them and you tell me what happened." (See id., p. 41).

46. Plaintiff also testified that, when Rodriguez asked to speak with Plaintiff about performance issues, Plaintiff responded: "You want to terminate me, just do it, but don't

8

go into my classroom every time to see what I'm doing. <u>You're not a teacher. You don't know how to teach. You're just somebody who gets paid by Platform. You don't know how to deal with education.</u>" (See id., pp. 41 - 42).

47. After Rodriguez informed Plaintiff that Plaintiff would not be returning for the second cycle at I.S. 52, Plaintiff, once again, protested and caused a significant disturbance in front of I.S. 52 students and parents, at which time Lima was asked to leave the building. (See Rodriguez Aff., ¶ 18).

### C. In February 2005, At The End Of The First SES Cycle, Platform Directed Adecco To Remove Plaintiff From Payroll.

48. Based upon Rodriguez's determination not to bring Plaintiff back for the I.S. 52 second cycle, Rodriguez instructed Platform's corporate office to have Adecco remove Lima from payroll effective immediately. (See id., ¶ 17).

49. February 2, 2005 was the last day Adecco received payroll information from Platform for Lima. (See Crothall, Aff., ¶ 14).

50. Adecco was not involved in any way in Platform's decision not to retain Plaintiff as an SES Instructor. (See id., ¶ 16).

51. At or around that time, because the first cycle of Platform's SES program was ending, other Platform SES instructors were also removed from Adecco's payroll. (See id., ¶ 17).

### IV. PLAINTIFF'S LACK OF EVIDENTIARY SUPPORT FOR HIS NATIONAL ORIGIN DISCRIMINATION CLAIMS

52. In his Complaint, Plaintiff's only specific allegations of national origin discrimination related to alleged comments made by Jessica Rosa, who is Hispanic, about people from the Dominican Republic. (See Ex. A. ¶ 8).

9

53. During Plaintiff's deposition, Plaintiff confirmed that: (a) Rosa's alleged comments which form the basis for Plaintiff's national origin discrimination claim all occurred during a single alleged telephone conversation between Rosa and Plaintiff; and (b) other than the alleged comments made during this single alleged telephone conversation, Plaintiff "never heard [Jessica] Rosa make any statements in any other communication regarding [Plaintiff's] Dominican national origin." (See Lima Tr., pp 11 - 13, 16 - 17).

54. Plaintiff also confirmed during his deposition that "other than [Jessica Rosa's] alleged statements regarding Dominicans" and purported unspecified statements by a co-worker[8] that Plaintiff "didn't actually hear about Dominicans," Plaintiff did not have "any other facts which would support [his] claim that [he] was subjected to unlawful discrimination based on [his] Dominican national origin." (See id., pp. 11 - 12).

55. Plaintiff also testified that he is not aware of any other Dominican SES Instructors who Plaintiff believes experienced any form of discrimination. (See id., p. 92).

                                            Respectfully submitted,

                                            JACKSON LEWIS LLP
                                            59 Maiden Lane
                                            New York, New York
                                            (212) 545 - 4000

By: _____
            Diane Windholz (DW 9806)
            Matthew A. Steinberg (MS 3979)

ATTORNEYS FOR DEFENDANT
ADECCO USA, INC.

Dated: December 12, 2008
       New York, New York

---

[8]     Plaintiff confirmed at his deposition that this alleged co-worker, Ms. Garcia, did not supervise Plaintiff. (See Lima Tr., p. 183).

10

## CERTIFICATE OF SERVICE

      I hereby certify that on December 12, 2008 a true and correct copy of the foregoing Statement Of Undisputed Material Facts was served upon Plaintiff *Pro Se* Jose Lima by placing said document in a properly addressed envelope and mailing it by Certified United States Mail to Plaintiff at his home address of record, located at 3525 Morris Avenue, Apartment C-9, Bronx, New York 10468.

_____
Matthew A. Steinberg, Esq.