UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

JOSE LIMA,                                          :

                   Plaintiff,       :

      - against -                           :

ADDECO and/or PLATFORM                              :
LEARNING, INC.,
                          :

                 Defendant.       :

                          :
- - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6 9 0 9

**MEMORANDUM DECISION**

07 Civ. 6573 (DC)

**APPEARANCES:**       JOSE LIMA
                       2525 Morris Avenue, Apt. C-9
                       Bronx, New York  10468
                         Plaintiff Pro Se

                       JACKSON LEWIS LLP
                         By:  Matthew Steinberg, Esq.
                              Diane Windholz, Esq.
                       59 Maiden Lane
                       New York, New York  10038-4502
                         Attorneys for Defendant

**CHIN, District Judge**

           In this employment case, pro se plaintiff Jose Lima
("Lima") alleges that defendant Adecco USA, Inc. ("Adecco")
discriminated against him on the basis of his national origin, in
violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e et seq.  Adecco moves for summary judgment dismissing the
complaint.  For the reasons that follow, Adecco's motion is
granted and the complaint is dismissed.

---

      [1]    Defendant's name is spelled incorrectly in the caption.
It is Adecco USA, Inc., not "Addeco."

## BACKGROUND

### A.   The Facts

The facts are drawn from the pleadings, the parties' declarations, depositions, and other documentary evidence.  For purposes of this motion, the facts are construed in the light most favorable to Lima, and conflicts in the evidence have been resolved in his favor.

### 1.   The Parties

From approximately October 2004 to February 2005, Lima was employed as a Supplemental Education Service ("SES") instructor in an after-school tutoring program held at different New York City public schools.  (See Lima Dep. at 25).  The program was administered by a company called Platform Learning, Inc. ("Platform").[2]  (Young Aff. ¶ 2).  Lima worked for the program at two New York City schools, Public School 192 ("P.S. 192") and Intermediate School 52 ("I.S. 52").  He was also employed full-time as a teacher in the New York City public school system.  (Lima Dep. at 34).

Adecco is a placement agency that provides temporary and full-time services to clients throughout the country.  (Crothal Aff. ¶ 3).  It had a "business relationship" with Platform, providing "payroll and related administrative services for Platform's SES program."  (Id. ¶ 7).

---

[2]      Platform is named as a defendant in this action, but Lima was unable to serve Platform with the summons and complaint.

-2-

## 2. **Adecco and Platform's Roles**

The parties dispute whether Lima was hired by Adecco or
Platform. It is undisputed that Lima completed his new hire
paperwork for the SES Instructor position through Adecco. (See
Lima Ex. A). Adecco certified Lima's employment eligibility,
signing his federal I-9 and W-4 forms as his "employer." (Id.).
Lima also signed an "Employee Acknowledgment and Confidentiality
and Non-Disclosure Agreement" with Adecco, in which he
"acknowledge[d] and agree[d] that he [was] an employee of Adecco
and [was] not an employee of any Client of Adecco." (Id.). In
addition, Adecco administered payroll for Platform and made
direct deposits into Lima's bank account during his employment as
a Platform SES instructor. (Lima Exs. I, J). Adecco did not
supervise or assess Lima or other SES instructors' work; nor did
it have any role in designing the SES curriculum, assigning
instructors to schools, or disciplining instructors. (Rodriguez
Aff. ¶¶ 4, 6; Crothall Aff. ¶¶ 8, 10, 13).

Lima was supervised by Platform employees. (Young Aff.
¶ 8; Rodriguez ¶¶ 1, 13). When Platform managers sought to end
an SES instructor's employment with the program, they directed
Adecco "to remove the instructor from payroll and to cease
issuing his or her paychecks." (Rodriguez Aff. ¶ 6). Lima was
removed from payroll pursuant to his Platform supervisor Clayvi
Rodriguez's instruction "to have Adecco take Lima off payroll
effective immediately." (Id. ¶ 17). Adecco did not have
authority to reverse Platform's decision to terminate Lima's
employment as an SES instructor. (Id. ¶¶ 6, 17).

-3-

### 3.   <u>Lima's Employment</u>

Initially Lima was assigned to work at P.S. 192 on Tuesday and Thursday afternoons and Saturday mornings and at I.S. 52 on Wednesday and Friday afternoons.  He was supervised by Platform employees at both locations.  At P.S. 192, Lima was supervised by Jessica Rosa, a Platform "representative."  (Young Aff. ¶ 8).  Rosa is from Puerto Rico.  (Lima Dep. at 17).  At I.S. 52, Lima was supervised by Clayvi Rodriguez, Platform's Area Manager for the SES program.  (Lima Dep. at  160-61, 191-92; Rodriguez Aff. ¶¶ 1, 13).  Rodriguez is of Dominican national origin, like Lima.  (Rodriguez Aff. ¶ 19).

In November 2004, Rosa removed Lima from the Saturday morning program at P.S. 192.  (Lima Aff. ¶ 4).  She then removed him from his remaining Tuesday and Thursday work times at P.S. 192 one month later.  (Id. ¶ 5).  Lima sought an explanation from Adecco about his removal from SES classes at P.S. 192.  Ana Maria, an Adecco representative, told Lima she had never seen anyone suspended without warning.  (Lima Ex. B).[3]  Ana Maria helped Lima follow up with Rosa and Rosa's supervisor Bruce.

---

[3]     In opposition to the motion, Lima submitted his own affidavit, executed under oath.  Referenced in his affidavit is his unsworn, untranslated affidavit in Spanish, dated February 18, 2005.  The unsworn, untranslated affidavit refers to statements made by Ana Maria.  The statements attributed to her are hearsay, if not double hearsay.  Nevertheless, for purposes of deciding this motion, the Court gives Lima the benefit of the doubt and considers the statements.  Additionally, although Lima did not provide a court-certified translation, the Court has obtained a written translation of the statement from the Interpreters Office for the Southern District of New York for purposes of deciding this motion.

Rosa told Lima he was being removed because of parent complaints
to Adecco.  (Lima Aff. ¶ 5; Lima Ex. B).  Ana Maria, however,
told Lima that the "central office" had not received any
complaints about him.  (Lima Ex. B).

At or around this time, Rosa contacted Lima and told
him to stop calling Adecco.  (Lima Ex. B).  She told him he was

> not going to continue in the program simply
> because she doesn't want [him] there, because
> the problem is that the Dominican believes
> that we are somebody, but most of us come to
> Puerto Rico by boat and when we establish in
> US we think that we are something, when we
> don't even speak a good English, very
> different from they (Puertoricans) that they
> are American by born and speak a perfect
> English.

(Lima Aff. ¶ 7; Lima Ex. B).  In December 2004, after being told
he would no longer be teaching SES classes at P.S. 192, Lima was
removed from the building by a school safety officer after
refusing to leave.  (Young Aff. ¶¶ 6-8; Lima Dep. at 32-35).

Though he no longer taught SES classes at P.S. 192,
Lima continued to work as an SES Instructor at I.S. 52.  In
January 2005, Lima's supervisor, Rodriguez, told him that
teachers and parents had called Adecco to complain about him.
(Lima Ex. B).  In February 2005, Rodriguez asked Lima not to
return for the new SES cycle at Platform.  (Rodriguez Aff. ¶ 17).
Thereafter, Rodriguez instructed Jackie King, the liaison between
I.S. 52 and Platform, "to have Adecco take Lima off payroll
effective immediately."  (Id.; see also Crothall Aff. ¶¶ 14, 15).

-5-

**B.    Procedural History**

On June 22, 2005, Lima filed a verified complaint with
the City of New York Commission on Human Rights (the "Human
Rights Commission"), charging Adecco and Rosa with unlawful
discriminatory practices.  (Steinberg Decl. Exs. A, F).  The
Human Rights Commission determined there was "no probable cause
to believe" that Adecco and Rosa engaged in the unlawful
discriminatory practices alleged.  (Id. Ex. F).  Lima also filed
a charge with the U.S. Equal Employment Opportunity Commission
which adopted the Human Rights Commission's findings, dismissed
Lima's charge, and issued a right to sue letter on May 2, 2007.
(Id. Ex. A).

Lima filed the complaint in this action on July 23,
2007.  Discovery closed in October 2008.  This motion followed.

<strong>DISCUSSION</strong>

Adecco moves for summary judgment dismissing the
complaint on the grounds that (1) it cannot be held liable for
employment discrimination, as it was not Lima's employer as a
matter of law; and (2) even if it was Lima's employer, Lima
cannot establish a prima facie case of discrimination on the
basis of national origin.

**A.    Summary Judgment Standard**

The standards governing motions for summary judgment
are well-settled.  A court may grant summary judgment only where
there is no genuine issue of material fact and the moving party
is therefore entitled to judgment as a matter of law.  See Fed R.

-6-

Civ. P. 56(c); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).  Summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party.  See NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 178-79 (2d Cir. 2008).  In deciding a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor.  In re "Agent Orange" Prod. Liab. Litig., 517 F.3d 76, 87 (2d Cir. 2008).  The non-moving party cannot, however, "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture."  W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (internal citations and quotations omitted).

In deciding a motion for summary judgment, the role of the Court is not to ask whether "the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Because the Court's role is limited in this respect, it may not make factual findings, determine credibility of witnesses, or weigh evidence. See Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005); Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996); United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994).

B.   **Adecco's Liability as Employer**

    A.   **Applicable Law**

        1.   **Title VII**

Title VII protects individuals from discriminatory employment practices.  It is an "unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1).  The "ultimate issue" in any employment discrimination case is whether the plaintiff has met his burden of proving that the adverse employment decision was motivated at least in part by an "impermissible reason" -- i.e., that there was discriminatory intent.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146 (2000); Fields v. N.Y. State Office of Mental Retardation & Dev'l Disabilities, 115 F.3d 116, 119 (2d Cir. 1997).

        2.   **Employer Liability**

The existence of an employer-employee relationship is a "primary element" of Title VII claims.  Gulino v. New York State Educ. Dep't, 460 F.3d 361, 370 (2d Cir. 2006).  The definition of "employer" has been construed liberally for Title VII purposes "and does not require a direct employer/employee relationship." Goodwin v. Orange & Rockland Util., Inc., No. 04 Civ. 207 (WCC), 2005 WL 2647929, at *3 (S.D.N.Y. Oct. 14, 2005).  Instead, the

term is to be viewed "functionally, to encompass persons who are
not employers in conventional terms, but who nevertheless control
some aspect of an employee's compensation or terms, conditions,
or privileges of employment." Gore v. RBA Group, Inc., No. 03
Civ. 9442 (KMK)(JCF), 2008 WL 857530, at *4 (S.D.N.Y. March 31,
2008); see also Gulino, 460 F.3d 371-72 ("common-law element of
control is the principal guidepost that should be followed" when
determining whether employment relationship exists); Nelson v.
Beechwood Org., No. 03 Civ. 4441 (GEL), 2004 WL 2978278, at *3
(S.D.N.Y. Dec. 21, 2004) ("under Title VII, an employer
compensates and controls an employee's work") (emphasis in the
original); Serrano v. 900 5th Ave. Corp., 4 F. Supp. 2d 315, 316-
17 (S.D.N.Y. 1998)(definition of "employer" is "sufficiently
broad to encompass any party who significantly affects access of
any individual to employment opportunities") (overruled on other
grounds).

        Courts have developed different doctrines for
determining when an entity is an individual's "employer" for
Title VII purposes.  Two doctrines are relevant in cases where
two or more entities are involved in an individual's employment.
First, the "single employer" doctrine applies when "two nominally
separate entities are actually part of a single integrated
enterprise." Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d
193, 198 (2d Cir. 2005).  Single integrated enterprises can
include parent and wholly-owned subsidiary corporations or
separate corporations that operate under common ownership and

-9-

management.  See id.; Parker v. Columbia Pictures Indus., 204
F.3d 326, 341 (2d Cir. 2000).  Where two entities are deemed part
of a single integrated enterprise, then both entities are
"subject to joint liability for employment-related acts."  Laurin
v. Pokoik, No. 02 Civ. 1938 (LMM), 2004 WL 513999, at *4
(S.D.N.Y. March 15, 2004); see also Arculeo, 425 F.3d at 198.
Four factors are considered: "(1) interrelation of operations,
(2) centralized control of labor relations, (3) common
management, and (4) common ownership or financial support."
Laurin, 2004 WL 513999, at *4 (citations omitted); see also Cook
v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240-41 (2d Cir.
1995) (adopting four-factor test).

        Second, the "joint employer" doctrine applies when
separate legal entities have "chosen to handle certain aspects of
their employer-employee relationships jointly."  Gore, 2008 WL
857530, at *3 (citations and internal quotation marks omitted);
see also Arculeo, 425 F.3d at 198.  Here, courts look at
"commonality of hiring, firing, discipline, pay, insurance,
records, and supervision" to determine whether an entity is a
joint employer.  N.L.R.B. v. Solid Waste Servs., Inc., 38 F.3d
93, 94 (2d Cir. 1994); see also Nelson, 2004 WL 2978278, at *4;
Laurin, 2004 WL 513999, at *8 (key inquiry is whether entity
"control[s] some aspect" of employee's work).

        The joint employer doctrine has been applied to
temporary employment or staffing agencies and their client
entities; it has also been applied to contractors and

-10-

subcontractors and other scenarios where two separate entities have control over an employee's employment.  See Nelson, 2004 WL 2978278, at **4-5 (fact question existed as to whether subcontractor and contractor were functionally joint employers of plaintiff); DeWitt v. Lieberman, 48 F. Supp. 2d 280, 288 (S.D.N.Y. 1999) (employment agency that paid plaintiff and client entity that supervised plaintiff considered plaintiff's joint employers); Laurin, 2004 WL 513999, at **4-9 (fact questions existed as to whether sole proprietorship where plaintiff worked and corporation that employed proprietor were single employer and/or joint employers); see also Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 611 F. Supp. 344, 347-49 (S.D.N.Y. 1984) (utilizing common-law loaned servant doctrine to hold that plaintiff was employee of both temporary employment agency and client entity for Title VII purposes).

          Even where two companies are deemed a joint employer, however, it is not necessarily the case that both are liable for discriminatory conduct in violation of Title VII.  Though the Second Circuit has not ruled on the issue, other courts have found that even when a plaintiff establishes an entity's status as part of a joint employer, the plaintiff must still show "that the joint employer knew or should have known of the [discriminatory] conduct and failed to take corrective measures within its control."  Watson v. Adecco Empl. Servs., Inc., 252 F. Supp. 2d 1347, 1356-57 (M.D. Fla. 2003).  Thus in Watson, the court found that even if defendant Adecco, as the temporary

-11-

employment agency that had placed plaintiffs as workers in a
school cafeteria, were to be deemed a joint employer, it could
not be liable for the school's alleged discriminatory discharge
of plaintiffs, because plaintiffs could not show Adecco failed to
take corrective measures within its control.  Id. (noting that
"the corrective measures available to Adecco are limited, for
Adecco, a private company, cannot force its client, another
private company, not to discriminate or run its business in a
certain manner"); see also Neal v. Manpower Int'l., No. 00 Civ.
277 (LAC), 2001 WL 1923127, at **9-10 (N.D. Fla. Sept. 17, 2001)
(assuming temporary agency was plaintiff's joint employer but
finding no basis for liability because agency was not responsible
for tangible employment action against plaintiff); Caldwell v.
ServiceMaster Corp., 966 F. Supp. 33, 46 (D.D.C. 1997) (no basis
for liability where plaintiff failed to provide sufficient notice
to employment agency about discrimination by employer).

**B.    Application**

        Adecco argues the case must be dismissed because it
cannot be considered Lima's employer as a matter of law.   I
conclude that a question of fact exists as to Adecco's status as
Lima's employer but grant Adecco's motion because no reasonable
jury could return a verdict for Lima on Adecco's liability for
the unlawful discrimination alleged.

**1.    Adecco's Employer Status**

        Lima has presented sufficient evidence to raise a
question of fact about Adecco's status as Lima's employer.

-12-

Adecco represented itself as Lima's employer for tax and
immigration purposes and signed an agreement with Lima in which
Lima acknowledged his status as "employee."  (Lima Ex. A).
Adecco also paid Lima for his work in the Platform program,
making direct deposits into Lima's bank account.  (Lima Exs. I,
J).  These documents certainly indicate that Adecco controlled at
least some aspects of Lima's terms and conditions of employment,
such that a fact question exists as to Adecco's employer status.

### 2.   Employer Liability

The analysis is not concluded by determining that fact
issues exist as to Adecco's employer status.  Undisputed evidence
in the record also shows that (1) Platform also controlled some
terms and conditions of Lima's work, and (2) only Platform
employees were involved in the discrimination alleged by Lima.
The question is thus whether a reasonable jury could find Adecco
liable for alleged discrimination by Platform.

### a.   Liability as Joint Employer

No reasonable jury could find Adecco knew or should
have known about unlawful discriminatory conduct by Platform,
such that Adecco may be held liable as a joint employer of Lima
with Platform.  First, undisputed evidence in the record shows
that Platform controlled the principal terms and conditions of
Lima's work.  Lima does not dispute that Platform was the entity
that assigned him to different schools for the SES program,
supervised his work, and terminated his employment with the
program.  A reasonable fact-finder could only find, therefore,

-13-

that Platform was also Lima's employer under the functional
definition of the term.  See Gore, 2008 WL 857530, at *4
(question is whether entity "control[s] some aspect of an
employee's compensation or terms, conditions or privileges of
employment").

        Second, Lima's allegations of discriminatory treatment
involve only conduct by Platform.  Lima's primary evidence in
support of his claim are alleged derogatory comments made by Rosa
about Dominicans.  (Lima Aff. ¶ 7).  Rosa made the comments in
response to Lima's queries about the reasons for his removal from
SES instruction at P.S. 192.  Lima further alleges that
Rodriguez, his supervisor at I.S. 52, disliked him and wanted to
terminate his employment because he "had a problem at the other
school and the manager from the other school told [Rodriguez] to
terminate [Lima]."  (Lima Aff. ¶ 10; see also Lopez Aff. ¶¶ 2-5).
Lima does not dispute that both Rosa and Rodriguez are Platform
employees.

        Third, Lima does not dispute that Adecco played no role
in the decision to remove him from P.S. 192, or in the decision
to terminate Lima's employment as an SES instructor.  Lima states
he spoke to an Adecco representative about his removal from SES
instructor duties at P.S. 192, and that the Adecco representative
helped put him in touch with Rosa and her supervisor.  (Lima Ex.
B).  This interaction, however, does not create a genuine issue
as to Adecco's role in assessing, disciplining, and firing SES
instructors.  Moreover, Lima makes no indication that he informed

-14-

Adecco about Rosa's discriminatory comments; nor does the record support any inference that Adecco knew or should have known about any discriminatory treatment towards Lima until after the fact. See Caldwell, 966 F. Supp. at 46-47 (plaintiff's vague statements to employment agency that "something funny was going on" were insufficient to provide notice to agency of discriminatory conduct by employer).

Even assuming Lima's termination from his employment as an SES instructor was motivated in part by an impermissible reason, then, Lima has not provided any evidence linking Adecco in any way with the adverse employment decision. Accordingly, Adecco cannot be held liable as a joint employer for discriminatory conduct by Platform in violation of Title VII, because Lima has presented no evidence showing Adecco "knew or should have known of the [discriminatory] conduct and failed to take corrective measures within its control." Watson, 252 F. Supp. 2d at 1356-57.

### b. **Liability as Single Employer**

Lima claims Platform and Adecco were either the same entity or should otherwise be considered a single employer. As a single employer, Adecco would be "subject to joint liability for employment-related acts." Laurin, 2004 WL 513999, at *4. No reasonable jury, however, could find on this record that Adecco and Platform were the same entity or that Adecco was part of a single-integrated enterprise with Platform, such that the two entities could be considered a single employer.

Adecco's undisputed evidence shows that it is a separate entity that had a business relationship with Platform. (Crothall Aff. ¶ 7).  Additionally, Lima has presented no evidence showing "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial support" between Platform and Adecco.  Laurin, 2004 WL 513999, at *4 (discussing factors). Indeed, other than his appearing to use the terms Adecco and Platform interchangeably in his declaration and brief, Lima presents no evidence about the relationship between Platform and Adecco.  Accordingly, Lima fails to raise a genuine issue of material fact regarding his assertion that Adecco and Platform are the same entity or a single employer.  Adecco may not be held liable for the alleged discrimination under a single employer theory.

Accordingly, the complaint against Adecco must be dismissed, as no reasonable jury could find in Lima's favor on the question of Adecco's liability.

## CONCLUSION

For the foregoing reasons, Adecco's summary judgment motion is granted and the complaint is dismissed.  The Clerk of the Court shall enter judgment accordingly, with costs but without attorneys' fees.

SO ORDERED.

Dated:    New York, New York
          June 9, 2009

DENNY CHIN
United States District Judge

-16-